PHARES & HERNDON *VS.* STEWART.

1. A wrongdoer is responsible for all the consequences which flow *immediately* from his wrongful or negligent acts; and this rule is the same in civil as in criminal cases, and the responsibility is not relieved by the fact, that the *consequences* of the injurious act could have been prevented by the care or skill of the sufferer.

Error to the Circuit court of Mobile.

Case tried before *Harris*, J.

This action was commenced in the Circuit court of Greene county, and subsequently removed to that of Mobile, in which it was determined by a verdict and judgment in favor of Stewart, the plaintiff, who declared *in case* against Phares & Herndon, as the owners of the steam-boat Choctaw, for an injury arising from the negligent and unskilful conduct of their servants, while in charge of the said steam-boat, which came in collision with a flat-boat, laden with corn, and caused the destruction of flat and lading, which were the property of the plaintiff.

The only questions made in this court, arise from exceptions taken at the trial, to the charge of the Circuit court, and to its refusal to give certain instructions to the jury, asked for by the defendants.

The evidence disclosed by the bill of exceptions, so far as is necessary to an understanding of the questions presented before this court, is as follows: "On the part of the plaintiff, it was shewn, that on Monday, the 29th May, 1834, about one o'clock A. M., the steam-boat Choc-

Phares & Herndon *vs.* Stewart.

taw, then ascending the Tombeckbee river, came in col-
lision with the plaintiff's flat-boat. The master of the
flat, with one of the crew, heard the noise of a steam-
boat, apparently below them, on the river, a mile or a
mile and a half distant; the remainder of the crew were
immediately apprised of the approach of the steam-boat,
the fire on the flat stirred up, and pine wood roasted near
the fire, so as to enable the crew to produce a blaze
quickly, as soon as the steam-boat should be seen. Soon
after this, the steam-boat turned a point, about a quarter
of a mile distant from the flat, and in full view; the
master of the flat instantly lighted his torch of pine, and
placing himself in the front part of his flat, held it raised:
at this time, both steam-boat and flat were in their pro-
per places, according to the rules recognized in the navi-
gation of the river. When the boats had approached
within one hundred or one hundred and fifty yards of
each other, the master of the flat, feeling satisfied that
his light had been plainly seen by those on board the
steam-boat, laid it down, but it continued to blaze and
give light; he then examined the position of the steam-
boat particularly, and from the course it was steering,
he judged that the boats would pass each other at a dis-
tance of twenty or thirty yards; soon after this, he ob-
served the steam-boat make a sheer toward the flat, and
he and some of his crew, shouted with loud cries, to
warn the crew of the steam-boat to alter her course, or
stop it, but it continued to advance in the direction of
the flat, which it struck in the bow, with a barge which
the steam-boat then had at her side; after the collision,
the flat swung round, in which position it received ano-

9 P                           43

ther shock from the bow of the steam-boat; the flat then commenced filling with water, and so rapidly, that the master, with all his crew, immediately abandoned it, and made their escape to the steam-boat; the flat was stove and broken by the shocks so received—she entirely filled, and sunk in a few moments; the river was sufficiently wide for the steam-boat to have avoided the collision, by the exercise of a reasonable degree of care, and the injury would not have happened, if the steam-boat had continued to be steered the same course it was steering, when first observed approaching the flat; the flat could not have avoided the collision by any means within the power of its crew, and the injury was justly attributable to the carelessness and want of skill of those in charge of the steam-boat.

On behalf of the defendants, it was proved that the steam-boat was on the proper side of the river, and sheered across at the proper place. The moon was rising in the tops of the trees, and was behind the steam-boat, so as to throw their shadows ahead; no light was seen on the flat, by the pilot of the steam-boat, before the boats came in contact, nor was any sign of fire seen on the same by any one, after the accident occurred; the pilot did not see the flat, until the steam-boat was within the distance of fifty or one hundred yards of it, at which time the bell of the steam-boat was rung, and its wheels backed; the pilot steered the steam-boat, so as to pass the flat, if practicable, without injury, perceiving that the headway of the steam-boat could not be stopped before it would reach the flat, but he could not change its course, so as to pass the flat, with the barge which the

steam-boat had in tow; the flat was struck by the barge; immediately when the collision took place, the master and crew of the flat jumped on the steam-boat, and did not return, to ascertain what injury had been done; some of the crew said they were glad to have an opportunity to quit the flat; no request was made of the captain of the steam-boat, or any other person, to aid in saving the flat or its lading; the flat did not sink entirely, but one edge or side of it remained above the water, and it was seen to float down the river as far as it could be seen—a quarter of a mile or more; the crew of the flat could have saved it and the lading uninjured, if they had made the necessary exertions to do so; the flat floated down the river, and drifted ashore at Johnson's landing, at the distance of four miles from the place of the accident, where, on the morning of the second day after the collision, it was seen by several witnesses, with one side or edge under water, and the other side entirely above the water; at this time, the flat could have been repaired, and the whole lading saved; the accident happened in a thickly settled neighborhood, where there were many negroes, and all necessary assistance could have been obtained, if applied for: two of the witnesses took from the flat some seventy or eighty barrels of corn, which was uninjured, and made good meal—a quantity of corn, which was wet, was taken out, and saved without injury: the master of the flat and its crew, returned up the country on the steam-boat, and never made an effort to save the flat or its lading, requested no assistance, nor did any of them see it afterwards. Witnesses, professing to understand the duties which devolve on

masters of flats, stated that there was no necessity for the crew of the flat-boat to leave it, and that their duty, and the duty of the master, was not to abandon it, and that they could have saved it, with the lading, if they had made any effort to do so. When the accident occurred, the flat swung around the bow of the steam-boat, and remained in that situation until the crew of the steam-boat had fastened the barge, which was separated by the collision, again to the steam-boat; this took from from fifteen to twenty-five minutes, during which time, no effort was made by the master of the flat, or any of his crew, to examine its condition, or save it and its lading.

The captain of the steam-boat stated that he was asleep when the accident occurred, and was waked by the pilot, who told him that the steam-boat had sunk the flat; that he (the pilot) was not at the wheel, but was absent on a necessary call at the time, and that another was at the wheel, when he heard the alarm bell rung, and hurried to the wheel, and endeavored to prevent the collision, but was unable to do so; he also stated, that when he got up, the flat was partially sunk, though it continued to float down the river, and was visible for some distance; that the crew of the flat were all off from it, on the steam-boat, with the exception of one, who was then getting out.

The defendants requested the court to charge the jury,

1. That if the crew of the flat, by reasonable exertions, could have saved it and its lading, the plaintiff could not recover. This charge was given with this qualification, viz. if the jury should believe, that the col-

Phares & Herndon *vs.* Stewart.

lision was owing to the neglect of those who had the management of the steam-boat, and was such as to induce a reasonable man, and one acquainted with the navigation of boats, to leave the flat for fear of loss of life, then the leaving of the flat was justifiable,—and if it was abandoned under such circumstances, the plaintiff might recover, although the boat did float down, and the corn might be (have been) secured by attention, and the aid of hands.

2. That even if the alarm was such as to induce the master and crew to leave the flat at the moment, yet when the alarm subsided, if they saw the flat was not sunk, but was floating above the water, it was their duty to have returned, and to have endeavored to save it and its lading. This charge the court refused to give, on the ground that it did not arise out of the proof.

The charge, as given, as well as the refusal to charge as requested, are assigned as error.

*Gayle*, for plaintiffs in error.
*Stewart*, contra.

GOLDTHWAITE, J.—The evidence disclosed by the bill of exceptions, is very contradictory, and it was the peculiar province of the jury, to determine what degree of credit ought to be given to the several witnesses. Before a verdict could properly have been rendered for the plaintiffs, the jury should have been satisfied that the collision between the boats, was caused by the negligence or improper conduct of those in charge of the steam-boat: either of these facts having been established, it was only

necessary to ascertain the amount of injury sustained by the plaintiff, and flowing immediately from the wrongful or negligent act of the defendants' servants: that the jury were thus satisfied, must be presumed from the verdict, and as no exception was taken to the opinion of the Circuit court, except in the particulars shown by the bill of exception, we must conclude, that the general rule of law, governing cases of this description, was correctly expounded to the jury.

In general, a party is responsible for all the consequences which flow *immediately* from his wrongful or negligent acts: such is the well established rule of the criminal law, which holds an individual responsible for a death caused by a wound, which might have been healed, if skilfully attended to in due season, though the responsibility is not incurred, if the death is caused by unskilful treatment, and is not the consequence of the wound itself.

In relation to civil suits, it is believed there is no exception to the general rule, as stated, though cases may be imagined, in which a modification of the principle might be necessary to effect the purposes of justice; as, if one, after receiving an injury of a slight and unimportant nature, was *wilfully* to neglect the necessary means to stop the progress of the injury, he might be, in strict justice, debarred from a recovery of all but the damages arising from the injury, at the point when his wilful neglect had intervened.

The counsel for the plaintiffs in error has supposed, that if the *consequences* of the injurious act could be prevented by the care or skill of the sufferer, that the wrong-

Phares & Herndon *vs.* Stewart.

doer is not responsible except for the direct and present injury. No authority has been cited to prove the exis- tence of this qualification or exception of the general rule, and it is believed that none can be found, as it does not seem consonant to reason, that any one shall be discharg- ed from the liability to answer for the immediate conse- quences of his own acts, by the omission or want of skill in another.

If, in the case before us, the collision of the boats was caused by the negligence or mismanagement of those in charge of the steam-boat, and the flat and its cargo could have been saved, after the collision, by the exercise of care and skill, it was incumbent on those who caused the injury, to have taken the necessary measures for the preservation of the property, if they sought to relieve themselves or their employers from liability; and al- though, as between the plaintiff in the suit and *his* ser- vants,—the master and the crew of the flat,—it might have been the duty of the latter, to take all the necessary care to prevent an extension of injury to their employer, after the collision had happened, yet if they neglected this duty, it did not discharge the defendants to this suit from a liability to answer for all the damages which di- rectly resulted from the negligence or mismanagement of *their* servants, in charge of the steam-boat.

If we examine the charge of the Circuit court by these principles, it will be found to be free from error. The defendants to the suit requested the court to instruct the jury, "that if the crew of the flat, by reasonable exer- tions, could have saved it and its lading, the plaintiff could not recover." These terms do not, in themselves,

sufficiently indicate whether the reasonable exertions of the crew of the flat were to have been put forth *before* or *after* the collision, and the evidence was so contradictory, as to warrant the one or the other impression, as the jury might give credit to the one or the other class of witnesses; hence the necessity for the explanation or qualification given by the Circuit court. "If (said the Circuit court,) the crew of the flat, by the exercise of reasonable exertions, could have saved it and its lading, the plaintiff ought not to recover; but if the collision was owing to the neglect of those who had the management of the steam boat, and it was such as to induce a reasonable man, and one acquainted with the navigation of boats, to leave the flat for fear of loss of life, then the leaving of the flat was justifiable; and if it was abandoned under such circumstances, the plaintiff might recover, although the boat did float down, and the corn might have been saved by attention, and the aid of hands." If the charge was asked under the impression, or with the view to instruct the jury, that in point of law, the neglect of the crew, to aid in saving the flat or the cargo, *after the collision* had taken place through the negligence or mismanagement of those in charge of the steam-boat, discharged the defendants from liability, it should have been refused, as the omission of the crew of the flat to perform their duty to its owners, could not relieve the defendants from the direct consequences of the want of care or skill of their servants.

In relation to the charge refused to be given, it may be observed, that no evidence is stated in the bill of exceptions, which will warrant the inference that the alarm,

Phares & Herndon *vs.* Stewart.

caused by the collision of the boats, had, in point of fact, subsided, or that the flat was floating down the river above the water, even if at the time, its crew had the means to re-gain it; therefore, the Circuit court was right in refusing the charge, for the reason which it states —that it was unwarranted by the proof: but the charge requested, was liable to another objection, equally decisive—it leads to no conclusion, in favor of, or against either party. As between the master and crew of the flat, it might have been the duty of the former, to have made use of reasonable exertions to save it and the lading, in as uninjured a condition as practicable, but the neglect of this duty did not discharge the defendants from the consequences legitimately flowing from the acts of their servants.

We are satisfied there is no error shewn in the proceedings in the Circuit court, and its judgment is affirmed.